# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

PAMELA CHENAULT,

    PLAINTIFF,

v.                                                      CASE NO.: CV-04-J-2792-NW

AMERIPRIDE LINEN AND APPAREL
SERVICES/AMERICAN LINEN SUPPLY
COMPANY,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 14), evidence and a memorandum in support of said motion (doc. 15), to which the plaintiff filed a response (doc. 18) and exhibits in support of her opposition. Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

### I.  Factual Background

Plaintiff sued her past employer for sexual harassment/sexual discrimination, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* Plaintiff worked for defendant from May, 1999, until she was terminated on November 6, 2003. Affidavit of Mary Geraldine Stanford, General Manager for defendant's Tuscumbia plant, ¶ 7.  She was

terminated shortly after ending a 6 month long sexual relationship she had with her supervisor, Steve Brantley. Complaint, ¶¶ 6, 8-9.

Brantley was the plaintiff's supervisor. Stanford affidavit, ¶ 8; plaintiff depo. at 21. Brantley would flirt and rub against her, but she did not mind. Plaintiff depo. at 55-56. The plaintiff did not complain about this because she thought she might lose her job because he was married and a production manager. *Id*., at 59-62. She told Brantley that he shouldn't rub past her because he would get in trouble. *Id*., at 56, 112. Plaintiff states he made remarks that offended her, but she never told him to stop. *Id*., at 58. She knew the defendant had a sexual harassment policy, but never complained to Brantley's supervisor. *Id*., at 62; defendant exhibit A.

Their affair began in February, 2003.[1] Plaintiff depo. at 51. Brantley and the plaintiff would meet on Fridays after work. *Id*., at 46, 63-67. She ended the affair in November, 2003, because Brantley said he could not leave his wife right then. *Id*., at 83-85. She states Brantley just said "don't stop loving me." *Id*., at 85.

In October, 2003, Stanford met with Brantley concerning plaintiff's numerous absences.[2] Stanford affidavit, ¶ 9. On November 4, 2003, plaintiff called in to report

---

[1]Brantley denies that the affair ever occurred. Brantley depo. at 63-65. However, because the court views the evidence in the light most favorable to the plaintiff, for purposes of this opinion, the court assumes the affair actually happened.

[2]Stanford states in her deposition that each of these events occurred in 2002. As this would be before the affair took place, the court is of the opinion the year "2002" as opposed to "2003" was typed in error.

she would not be at work, because her mother was very ill, and talked to Brantley. Plaintiff depo. at 89-90. The evening of November 4, the plaintiff told Brantley's brother, Jason , to tell Brantley she would not be at work on November 5.[3] *Id.*, at 91-94. Jason has no memory of this. Jason Groves depo. at 12. Plaintiff testified Jason told her he had relayed the message to Brantley, but she also agrees that under the defendant's policy, she could be terminated if she failed to notify them in some way that she would not be at work. Plaintiff's depo. at 23, 26-27, 97. *See also* affidavit of Stanford, ¶ 5.

On November 5, 2003, Brantley told Stanford that the plaintiff failed to report to work or call in. Stanford affidavit, ¶ 9; Stanford depo. at 63-65. Stanford responded that "... you warned her about absences; I guess she decided to quit."[4] Stanford depo. at 63-64. *See also* Stanford affidavit, ¶ 10; Stanford depo. at 69; Brantley depo. at 112. Brantley fired the plaintiff on November 6, 2003. Plaintiff depo. 85, 87-88, 98. Brantley told her he had to terminate her for not calling in and for excessive absences.[5]

---

[3]Brantley's brother, Jason Groves, lived with the plaintiff for several months. Plaintiff depo. at 76-77, 95; Brantley depo. at 13. However, according to Jason, the apartment manager had kicked him out of the apartment on November 1, 2003, for being too loud Halloween night. Groves depo. at 11-12. Therefore, under his version, he was not living with the plaintiff on November 4, 2003. He knew nothing about the affair. *Id.*, at 14-15. Brantley asserts that Jason was having an affair with the plaintiff and living with her. Brantley depo. at 68-69.

[4]The defendant's policy was that if someone did not call in within a half hour of the shift starting time, the defendant would assume that person quit. Brantley depo. at 39-40.

[5]Absenteeism was an ongoing problem for defendant. Brantley depo. at 33-36, 59-60.

*Id.*, at 88-90, 98-99; plaintiff exhibit J; Stanford depo. at 109-110.  He told her that Stanford had checked and saw that she did not call in.  Plaintiff depo. at 88, 99-100, 102.  Brantley walked out with her and told her he was sorry he had to fire her and that he could not cover for her.  *Id.*,  at 100-105.

The plaintiff agrees that she was told by Brantley that she had to stop missing so much work.  Plaintiff depo. at 90.  However, she does not remember being counseled about excessive absences.  *Id.*  An October 28, 2003, warning record shows that plaintiff was  warned about excessive absences and it states thereon that this was her last warning, termination would be next. Defendant exhibit B; plaintiff depo. at 135-137.

Brantley never said he was firing her because she ended their affair, but this is what the plaintiff thinks.  *Id.*, at 105-107, 118.  She did not consider this sexual harassment until she was fired.  *Id.*, at 111.  She did not tell Stanford that she thought she was being fired for ending her affair with Brantley.  *Id.*, at 108, 118.  Rather, she thinks defendant was wrong to fired her because her mother was dying. *Id.*, at 121.

According to Stanford, the employees could take time off as needed, but the consequence of too many absences was a verbal warning.  Stanford depo. at 42.  The handbook states that more than two unexcused absences in a three month period may lead to termination.  *Id.*, at 43.  Stanford noticed plaintiff was absent a lot and told

Brantley to give plaintiff the October 28, 2003 warning. *Id.*, at 50-53. Prior to plaintiff's termination, Brantley asked Stanford if she had received a message from plaintiff the morning of November 5, 2003. *Id.*, at 92. Stanford told Brantley, "Well, I guess we gave her the notice about too many absences, she didn't want to come to work today; she's taken care of this; she's decided she doesn't want to work here anymore." *Id.*, at 92-93. Stanford saw the plaintiff several days later, when she came to get her final paycheck, but the plaintiff did not mention her termination. Stanford affidavit, ¶ 11.

Stanford had no knowledge of the sexual relationship between plaintiff and Brantley until she received the plaintiff's EEOC charge in April.[6] Stanford affidavit, ¶ 14, Stanford depo. at 111; plaintiff exhibit F. Stanford testified that if she had known of the relationship, she would not have allowed Brantley to make decisions concerning plaintiff's employment without consulting her first. Stanford depo. at 114-115. 121. After she was fired, plaintiff applied for unemployment compensation, but her benefits were denied. Plaintiff depo. at 113-115; plaintiff exhibit E. On appeal of that decision, she did not mention she was fired for ending the affair, rather she told them it was because she missed work because her mother was sick. *Id.*, at 115-118; defendant exhibit C, letter from plaintiff dated December 11, 2003.

---

[6]According to Brantley, after the plaintiff was terminated, he received phone calls from her and Jason demanding money. Brantley depo. at 70-72, 98, 105, 107.

According to plaintiff, Brantley was fired for doing drugs at work, or because of their affair. Plaintiff depo. at 118-120. She never told anyone in management about the affair, and has no knowledge that anyone did know. *Id.* Brantley was fired less than a month after plaintiff for improper use of funds. Plaintiff exhibit G; Brantley depo. at 83, 93.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

To demonstrate sexual harassment, a plaintiff must show: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment;

(3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable." *Pipkins v. City of Temple Terrace, Florida,* 267 F.3d 1197, 1199 (11th Cir.2001).

The parties do not dispute that the plaintiff belongs to a protected group. The plaintiff argues that the harassment was unwelcome. However, the plaintiff testified that she did not mind Brantley's flirting with her. Plaintiff depo. at 56. She never complained about his attentions. *Id.* at 55-62. The plaintiff testified that she ended her affair with Brantley because he would not leave his wife. *Id*. at 84-85. Plaintiff never reported the affair, or Brantley's allegedly harassing actions prior to the affair, to Brantley's supervisor. She did not mention harassment when she was fired, or when she applied for unemployment compensation. Stanford first learned of plaintiff's claim months later when the plaintiff filed an EEOC charge. The plaintiff did not testify that, after ending their affair, Brantley demanded further sexual favors or he would fire her.

Harassment which culminates in a "tangible employment action," such as discharge, demotion or undesirable reassignment does alter the terms and conditions of employment. *Walton v. Johnson & Johnson Services, Inc..* 347 F.3d 1272, 1280 (11th Cir.2003). Under this analysis, when a supervisor engages in harassment which results in an adverse employment action, the employer is automatically held

vicariously liable for the harassment. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 790, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Plaintiff claims she was terminated because she ended her affair with Brantley, her supervisor.

Termination is a tangible employment action. However, there is no evidence in the record that the plaintiff "was discharged (as opposed to being harassed) *because of her sex.*" *Walton*, 347 F.3d at 1281. To the contrary, the undisputed evidence shows that plaintiff was discharged because she did not call in prior to her absence on November 5, 2003. This court must consider whether the defendant, when it terminated plaintiff, took her gender into account. *See Walton,* 347 F.3d at 1282. There is no evidence that it did so. Rather, both Brantley and Stanford testified that if someone did not call in prior to an absence, the defendant assumed the person quit. Neither could think of any exception to this rule. *See* Stanford depo. at 69; Brantley depo. at 47.

Even assuming that the plaintiff was terminated because she ended the affair, the court cannot conclude that this would be harassment based on the plaintiff's gender.[7] The Eleventh Circuit has differentiated between discrimination based on a

---

[7]Although the plaintiff argues that, under *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1188 (11th Cir.2001), a prior sexual relationship is not a "free pass to harass," the court is of the opinion that *Lipphardt* is inapplicable to the facts before this court. In *Lipphardt*, the plaintiff actually reported the alleged harassing conduct to her superiors, upon which she was terminated. Here, the plaintiff never reported any of her allegations to Brantley's

discriminatory animus "because of one's sex" and discrimination based on personal animosity resulting from a failed consensual relationship. *Pipkins*, 267 F.3d at 1200. Personal animosity is not the same as sex discrimination and is not prohibited by Title VII. *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986). A plaintiff cannot turn a personal feud into a sex discrimination case. *Succar v. Dade County School Brd*., 229 F.3d 1343, 1345 (11th Cir.2000), citing *McCollum*, 794 F.2d at 610.

Even if the plaintiff could establish that she was the victim of sexual harassment, she has established no basis to hold the defendant liable. She never reported Brantley's actions to anyone. She did not report the allegedly unwelcome comments prior to beginning a consensual sexual relationship, during the relationship, or after she ended the relationship because Brantley would not leave his wife. In fact, even after her termination, the plaintiff did not report the alleged harassment. When she applied for unemployment compensation, she stated she thought her termination was unfair because her mother was dying.

The defendant has set forth evidence that the plaintiff was terminated for excessive absences. The defendant does not argue the merits of why the plaintiff was absent, only that she was absent a lot. The plaintiff agrees that under the defendant's policy, she was subject to termination if she failed to call in or report to work. Thus,

---

supervisor.

even if the plaintiff had satisfied her burden to establish a prima facie case, the defendant has offered a legitimate reason for its actions. *See e.g., Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). Not only has the plaintiff failed to rebut the reason offered by the defendant, but even agrees it is a valid reason for the defendant to terminate her. *See e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825 (1973).

## **CONCLUSION**

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 21st day of July, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE